Case 4:23-cv-01849   Document 36   Filed on 09/23/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
September 23, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALBERTO ALVARADO, § § Plaintiff, § § VS. § BRIESE SCHIFFAHRTS GMBH & CO. KG § MS SAPPHIRE, *et al.*, § § Defendants. § | CIVIL ACTION NO. 4:23-CV-01849 |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

Before the Court are the defendant's Briese Schiffahrts GmbH & Co., KG MS Sapphire, Briese Schiffahrts GmbH & Co., KG ("the Sapphire defendants") motion for summary judgment (Dkt. No. 27). Also before the Court is the plaintiff's, Alberto Alvarado, response (Dkt. No. 28), the Sapphire defendants' reply (Dkt. No. 29), JacintoPort International LLC's motion for summary judgment against the plaintiff (Dkt. No. 31) and the plaintiff's response (Dkt. No. 34). The Court has carefully reviewed the pleadings, the evidence provided, and the applicable law and determines that, the Sapphire defendants' motion for summary judgment and JacintoPort's motion for summary judgment should be **GRANTED**.

### II.    FACTUAL BACKGROUND

On or about December 12, 2020, the plaintiff reported to work at the JacintoPort terminal in Houston, Texas where his employer, Labor Finders had summoned him to report to assist in loading cargo in the hold of the M/V BBC Sapphire.

According to the plaintiff, this was his first time aboard a vessel, and he had not received directions, training, or instructions from his employer, JacintoPort, or anyone else, prior to boarding the vessel. In this capacity, the plaintiff was considered a longshoreman and the "borrowed employee" of JacintoPort.

The plaintiff boarded the vessel around 7:00 AM along with two female workers. He admits that he was instructed by a crewman to descend a ladder, aboard the vessel, to the station where he was to begin his chores. The plaintiff testified that the ladder that he mounted descended through a chute that was dark and poorly lit. The ladder was wet and muddy, and during the descent, it ended on a transition platform where he was to take a second ladder for the remaining descent into the hold. When he reached the end of the first ladder and began to transition to the second ladder, he slipped and fell through the opening in the platform some 15 feet below. He suffered broken legs (both legs) in multiple places. The Court will address the motions in reverse order.

## III.   CONTENTIONS OF THE PARTIES

### A.  THE PLAINTIFF'S AND JACINTOPORT'S CONTENTIONS

The plaintiff argues that he was not the borrowed employee of JacintoPort. This argument appears to be based on the premise that he received no directives or training from JacintoPort; hence, no relationship developed. He points to the nine factors discussed in *Alday v. Patterson Truck Line, Inc*., 750 F2d 375, 376 (5th Cir. 1985) (other citation omitted). The central question, he proffers, based on the evidence shows that at the time of his injury, JacintoPort had "the power to control and direct [him] in the performance of his work. *See, Hall v. Diamond M Co.,* 732 F2d 1246, 1249 (5th Cir. 1984).

JacintoPort contradicts the plaintiff's assertion, by its argument asserts that the plaintiff was a borrowed employee, as a matter of law. Hence, as a longshoreman, the plaintiff's claims

against JacintoPort are governed by the Longshore and Harbor Workers' Compensation Act ("The LHWCA"), 33 U.S.C § 905 (b). In support of its contention, JacintoPort points out that "both directly and through the plaintiff's "formal" employer, Labor Finders, he received compensation for his injuries. Therefore, JacintoPort argues, it is entitled to the LHWCA's exclusive defense which defense bars the plaintiff's suit against JacintoPort, as a matter of law. On this point, JacintoPort cites *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1243 (5th Cir. 1988) and *Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir. 1977).

The plaintiff's response and arguments to the contrary are unavailing. Moreover, they are self-serving and designed to avoid what the plaintiff otherwise admits in his pleadings. He cites to the factors that the Court should consider in determining whether his relationship with JacintoPort fits within the definition of a borrowed employee as stated om case law. *See Alday v. Patterson Truck Line, Inc*., 750 F2d 375, 376 (5th Cir. 1985) (cited by the plaintiff whose case refers to *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1969)). The plaintiff admits, however, that the *Alday/Ruiz* factors are not exclusive. Moreover, a review of the factors reveals that most of the factors are irrelevant here. JacintoPort and Labor Finders operated under a formal agreement whereby Labor Finders provided employees that were covered by worker compensation insurance and related employer/employee functions. In this instance, the plaintiff was supervised by one of JacintoPort's foreman of the stevedore gang. As well, Labor Finder's own investigation shows that the plaintiff was assigned to work on the M/V BBC Sapphire on December 12, at JacintoPort's dock; 3, Hatch #2.

It is the Court's view that the evidence is undisputed concerning Labor Finder's relationship with JacintoPort and, between JacintoPort's relationship with the plaintiff. The plaintiff was a borrowed employee of JacintoPort, and the plaintiff has not refuted this fact. *See,*

*Stults v. Conoco, Inc.*, 76 F3d 651, 656 (5th Cir. 1996). *See also*, (Affidavit of Shawn Harrigan, Document 31-4). Therefore, JacintoPort's motion for summary judgment is **GRANTED.**

### B. THE PLAINTIFF AND SAPPHIRE CONTENTIONS

#### 1. THE SAPPHIRE DEFENDANT'S CONTENTIONS

The Sapphire defendants have also moved for summary judgment on the plaintiff's claims. The Sapphire defendants are separate entities: "Briese" Sapphire was the owner of the M/V BBC Sapphire (the vessel) at the time of the incident that gave rise to the plaintiff's lawsuit. "Briese" KG served as the technical manager of the M/V BBC Sapphire at the time of the incident.

The Sapphire defendants do not dispute the fact that the plaintiff was injured or the extent of the plaintiff's injuries. They assert, however, that as a longshoreman, the plaintiff's claims against them are governed by the Longshore and Harbor Workers Compensation Act (LHWCA), 33 U.S.C § 905 (b). Hence, the Sapphire defendants' duties are limited to those provided in *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981). *De Los Santos* teaches that a vessel owner has essentially three areas of liability or responsibility, i.e., a turnover duty, an active control duty, and a duty to intervene. *Id at 167*.

#### 2. THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the Briese defendants failed in their turnover duty. Specifically, he asserts that the vessel ladder, chute, and lighting conditions were not turned over in such "a condition that an experienced stevedore could perform his work with reasonable safety; and, that the Sapphire defendants failed "to warn the stevedore of any latent or hidden hazards which [were] known or should [have been] known to the vessel." In this regard, the plaintiff asserts that the vessel was turned over in substandard condition and that the ladder, lighting, and chute constituted hidden hazards that could not be anticipated by any stevedore.

Next, the plaintiff asserts that the Sapphire defendants "actively controlled the cargo operations and the ladder chute. In support of this contention, the plaintiff points to the third officer's testimony and the Chief Mate's declaration stating that his duties, on the incident day, included assisting the Chief Mate with the safety of the cargo operations. Finally, the plaintiff contends that the vessel owner had a duty to intervene where the stevedore's judgment "is obviously improvident," citing to language in *Scindia* and *Casaceli v. Martech Intern., Inc.*, 774 F3d 1322, 1330-31 (5th Cir. 1983).

IV.    **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumberger*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Id.* (internal citations omitted). It may not satisfy its burden "with some

metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

## V.     ANALYSIS & DISCUSSION

The Court is of the opinion that the plaintiff's pleading, the evidence presented, and his deposition fail to raise a disputed fact issue concerning a duty owed to the plaintiff by the Sapphire defendants. In his pleadings and response to the Sapphire defendants' motion for summary judgment, the plaintiff asserts that he reported to the vessel at 7:00 am on his second day of employment with Labor Finders. He testified that at age 68, he had never boarded a vessel as a longshoreman to work in the hold handling cargo. On this occasion, he and several others, including the female workers, reported to their stevedore superintendent, Juan De La Cruz, signed in and received instructions concerning their duties for the day. When they boarded the vessel, they were met on the walkway by their supervisor. There was a safety meeting, and the plaintiff entered the hatch to descend the chute to the bottom of the hold where he would be working. He asserts that he was unaware that the ladder down was in two separate sections separated by a platform. He testified that he could not see the landing when he reached the bottom of the first ladder because of fog and insufficient (dim) lighting. He also asserts that there was fog that morning that also obscured the platform where he was to transition to the second ladder. However, at no time did he inform his supervisor that the chute was too foggy, or the lighting was inadequate.

When he reached the bottom of the first ladder section, he removed his hands from the ladder and turned to step on the platform/landing. He states, however, that he took a half-step back

to turn to the lower bottom section of the second ladder but he fell through the chute where he suffered broken legs.

The plaintiff's assertions and those of his experts fail to establish a duty under the LHWCA on the part of the Sapphire defendant under a turnover duty. The responsibility for lighting in the workplace and/or pointing out latent defects or unreasonably dangerous equipment is the responsibility of the stevedore, not the shipowner. *See* 29 C.F.R § 1918.12; 33 U.S.C § 941; see also, *Scindia*, 1451 U.S. at 167. Hence, any claims against the Sapphire defendants concerning the turnover of the vessel to JacintoPort are controlled by § 905 (b) of the LHWCA. The plaintiff has failed to present evidence that his claims, were based on latent hazards that a trained and informed longshoreman would not have recognized, or seen or observed, or expected to encounter. Hence, mud, moisture, and dimly lit areas on a vessel are not, as a matter of law, unreasonable hazards. *Scindia*, 457 U.S. at 170; *Kirksey v. Tonghai Maritime*, 535 F3d 388, 392 (5th Cir. 2008).

The plaintiff's claim that the Sapphire defendants owed a duty to him under an active control principle. This claim fails because the shipowners were not involved in the active operations concerning the movement of cargo at the time. Hence, the plaintiff was not exposed to harm from hazards created, caused, or tolerated by the shipowner. At the time of the plaintiff's injuries, there were no ongoing operations that involved the shipowner, or that the shipowner exercised active control over. It was the stevedore and JacintoPort's crew that had charge of the cargo in the ship's hold. Therefore, this claim is also unavailing.

Finally, the plaintiff asserts that the Sapphire defendants had a duty to intervene. Due to the fog, poor lighting, and mud on the ladder and platform, the shipowner had "actual knowledge" of an unreasonably dangerous hazard. The plaintiff argues, without evidence, and is confounded by the fact that only after the cargo hold, chute, and ladder were inspected, was the plaintiff

permitted to descend the ladder into the cargo hold. An inspection by the stevedore, eliminates any duty on the part of the ship crew to intervene. Hence, there is no issue to be resolved.

In deposition testimony, the plaintiff's expert witness concedes that the stevedore had the responsibility to instruct and/or train the plaintiff concerning any hazards. The plaintiff has not pointed to any negligence on the part of the shipowner that, assuming any such negligence, rest on the stevedore. Moreover, the plaintiff's expert concedes that the Sapphire Defendants did not breach a duty to intervene. Hence, the plaintiff has failed to demonstrate that a material fact concerning a duty to intervene exists. This claim, too, fails.

### V. CONCLUSION

Based on the foregoing analysis and discussion, the Court determines that no genuine issue of material fact has been demonstrated by the plaintiff that JacintoPort is liable beyond that required by the LHWCA. Also, the plaintiff has not demonstrated that the Sapphire defendants were negligent or owed any duty under theories of turnover, active control, or intervention.

Therefore, the motions for summary judgment by JacintoPort and the Sapphire Defendants are **GRANTED.**

It is so **ORDERED**.

SIGNED on September 23, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge